# EXHIBIT H

# PART 1

EXECUTION COPY

# AMENDED AND RESTATED

# LIMITED LIABILITY COMPANY AGREEMENT

# OF

# COVIS MANAGEMENT INVESTORS US LLC

# A DELAWARE LIMITED LIABILITY COMPANY

### Dated as of April 5, 2013

THE INTERESTS REPRESENTED BY THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS.  SUCH INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM.

THE INTERESTS REPRESENTED BY THIS LIMITED LIABILITY COMPANY AGREEMENT ARE ALSO SUBJECT TO ADDITIONAL RESTRICTIONS ON TRANSFER SET FORTH IN THIS LIMITED LIABILITY COMPANY AGREEMENT.

## TABLE OF CONTENTS

Page

ARTICLE I  DEFINITIONS .................................................................................................2

ARTICLE II  GENERAL PROVISIONS............................................................................2

    2.1    Formation and Continuation ...............................................................2
    2.2    Name.....................................................................................................2
    2.3    Term......................................................................................................2
    2.4    Registered Agent and Office................................................................2
    2.5    Principal Office....................................................................................3
    2.6    Purpose.................................................................................................3
    2.7    Statutory Compliance ..........................................................................3
    2.8    Title to Property...................................................................................3
    2.9    Payments of Individual Obligations ...................................................3
    2.10   Ownership............................................................................................3
    2.11   No State Law Partnership ...................................................................3

ARTICLE III  MEMBERSHIP INTERESTS ......................................................................4

    3.1    Authorized Membership Interests.......................................................4
    3.2    Additional Terms Applicable to the Profits Interests ........................4
    3.3    Names, Addresses and Membership Interests of Members...............6
    3.4    Additional Membership Interests........................................................6
    3.5    Certification of Membership Interests ................................................6
    3.6    Capital Accounts..................................................................................7
    3.7    Gross Asset Value................................................................................8
    3.8    Conversion...........................................................................................9

ARTICLE IV  DISTRIBUTIONS AND ALLOCATIONS .................................................9

    4.1    Distributions........................................................................................9
    4.2    Certain Sales .....................................................................................12
    4.3    Allocations.........................................................................................12
    4.4    Withholding of Tax............................................................................13

ARTICLE V  MANAGEMENT; LIABILITY; EXCULPATION ....................................13

    5.1    Management and Control..................................................................13
    5.2    Voting ................................................................................................15
    5.3    Authority, Duties and Obligations of the Board of Managers.........16
    5.4    Officers...............................................................................................16
    5.5    No Effect on Employment ................................................................17

| | | |
|---|---|---|
| 5.6 | Waiver of Partition | 17 |
| 5.7 | Covenant Not to Withdraw or Dissolve | 17 |
| 5.8 | Exculpation | 17 |
| 5.9 | Reliance | 18 |
| 5.10 | Indemnification | 18 |

**ARTICLE VI   MEMBERS; RESTRICTIVE COVENANTS ............................................. 19**

| | | |
|---|---|---|
| 6.1 | No Right to Bind the Company | 19 |
| 6.2 | Restrictive Covenants Applicable to Management Members | 19 |
| 6.3 | Liability | 20 |

**ARTICLE VII   BOOKS AND RECORDS ............................................................................. 21**

| | | |
|---|---|---|
| 7.1 | Books and Records | 21 |
| 7.2 | Financial Statements and Other Reports | 21 |
| 7.3 | Copies of Amendments to Members | 21 |

**ARTICLE VIII   TRANSFERS OF INTERESTS; REPURCHASE; FORFEITURE ....... 21**

| | | |
|---|---|---|
| 8.1 | Transfers of Interests | 21 |
| 8.2 | Rights in Relation to Termination of Employment / Services | 22 |
| 8.3 | Prohibited Activities | 24 |

**ARTICLE IX   DISSOLUTION AND WINDING UP ............................................................ 25**

| | | |
|---|---|---|
| 9.1 | Dissolution Events | 25 |
| 9.2 | Winding Up | 25 |
| 9.3 | Final Accountings | 26 |
| 9.4 | Certificate of Cancellation | 26 |

**ARTICLE X   REPRESENTATIONS OF MEMBERS ......................................................... 26**

| | | |
|---|---|---|
| 10.1 | Authorization | 26 |
| 10.2 | Compliance with Laws and Other Instruments | 26 |
| 10.3 | Consents | 26 |
| 10.4 | Investment | 27 |

**ARTICLE XI   MISCELLANEOUS ....................................................................................... 27**

| | | |
|---|---|---|
| 11.1 | Action by Written Consent | 27 |
| 11.2 | Notices | 27 |
| 11.3 | No Appraisal Rights | 27 |
| 11.4 | Interpretation | 27 |
| 11.5 | Governing Law | 28 |
| 11.6 | Binding Agreement | 28 |
| 11.7 | Severability | 28 |
| 11.8 | Entire Agreement | 28 |

| | | |
|---|---|---|
| 11.9 | Further Action | 29 |
| 11.10 | Amendment or Modification | 29 |
| 11.11 | Third Party Beneficiary | 29 |
| 11.12 | Counterparts | 29 |

| | |
|---|---|
| Exhibit A | Definitions |
| Exhibit B | Joinder to Operating Agreement |
| Exhibit C | Spousal Consent |
| | |
| Schedule A | Schedule of Members |
| Schedule 4.1(b) | Illustration of Liquidating Distribution Waterfall |

**AMENDED AND RESTATED**

**LIMITED LIABILITY COMPANY AGREEMENT**

**OF**

**COVIS MANAGEMENT INVESTORS US LLC**

This Amended and Restated Limited Liability Company Agreement (the "Operating Agreement") of COVIS MANAGEMENT INVESTORS US LLC, a Delaware limited liability company (the "Company"), dated as of April 5, 2013 (the "Effective Date"), is made and entered into by and among Covis Holdings GP, LLC, a Delaware limited liability company (the "Holdings GP"), the other Persons listed on the Schedule of Members and all other Persons who have or in the future become members in accordance with the provisions hereof (each, a "Management Member" and, together with Holdings GP, the "Members"), and Covis US Holdings LLC, a Delaware limited liability company ("Holdings"). For purposes of this Operating Agreement, the Members and Holdings each may be referred to individually as a "Party" and collectively as the "Parties".

RECITALS:

WHEREAS, the Certificate of Formation (the "Certificate of Formation") of the Company was filed with the Secretary of State of the State of Delaware on April 2, 2013 and the Company's initial operating agreement was executed on April 3, 2013;

WHEREAS, the Company has agreed to issue interests in the Company to certain employees and advisors of Holdings or its Subsidiaries, which interests will be governed by the terms of this Operating Agreement and the respective agreements pursuant to which such interests are granted;

WHEREAS, the Board of Managers may determine from time to time after the Effective Date to issue new Membership Interests (as defined below) to existing or future Management Members, which new Membership Interests would be "profits interests" and not "capital interests" as defined in Revenue Procedure 93-27 entitling the holder thereof to participate in the increase of the value (from and after the date of issuance of each such Membership Interest) of Holdings over the applicable Winding Up Value (as defined below);

WHEREAS, pursuant to the terms of this Operating Agreement, certain Profits Interests (as defined herein) may be subject to forfeiture, as more specifically set forth below and in the Award Agreement relating thereto;

WHEREAS, the Company is a party to that certain Master Restructuring Agreement, dated April 3, 2013, by and among the Company and the other parties thereto (the "Restructuring Agreement");

WHEREAS, Section 4.3 of the Restructuring Agreement contemplates the amendment of this Operating Agreement in order to reflect the terms of the Equity Investment (as defined in the Restructuring Agreement); and

WHEREAS, the Parties now desire to amend and restate the Operating Agreement in its entirety to include the Equity Investment Amendments (as defined in the Restructuring Agreement).

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I

## DEFINITIONS

Certain defined terms used in this Operating Agreement are set forth in Exhibit A. All other capitalized terms used but not defined herein shall have the meanings given to those terms in the Holdings LLC Agreement.

## ARTICLE II

## GENERAL PROVISIONS

2.1   Formation and Continuation. The Certificate of Formation forming the Company was filed by an "authorized person," as such term is used in the Act. Pursuant to the provisions of the Act and this Operating Agreement, the Members hereby enter into this Operating Agreement to set forth the rights and obligations of the Members and certain other matters related thereto. Except as expressly provided in this Operating Agreement to the contrary, the rights and obligations of the Members, and the administration and termination of the Company, shall be governed by the Act.

2.2   Name. The name of the Company shall be, and the business of the Company shall be conducted under the name of, "Covis Management Investors US LLC".

2.3   Term. The term of the Company shall begin on the date its Certificate of Formation was filed with the Secretary of State of the State of Delaware and shall continue until terminated as provided herein.

2.4   Registered Agent and Office. The registered agent for the service of process and the registered office shall be that Person and location reflected in the Certificate of Formation as filed in the office of the Secretary of State of the State of Delaware. The Company may, from time to time, change the registered agent or office through appropriate filings with the Secretary of State. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Company shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be.

2.5     Principal Office. The principal office of the Company shall be located at such place as may be determined by the Board of Managers from time to time. The Company may also have such other offices as the Board of Managers may determine from time to time.

2.6     Purpose. The purposes of the Company are, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in all acts or activities as the Company deems necessary, advisable or incidental to the furtherance of the foregoing. The Company shall have the power and authority to take any and all actions that are necessary, appropriate, advisable, convenient or incidental to or for the furtherance of the purposes set forth in the preceding sentence.

2.7     Statutory Compliance. The Company shall exist under and be governed by, and this Operating Agreement shall be construed in accordance with, the applicable laws of the State of Delaware. The Members shall make all filings and disclosures required by, and shall otherwise comply with, all such laws. The Members shall execute and file in the appropriate records any assumed or fictitious name certificates and other documents and instruments as may be necessary or appropriate with respect to the formation of, and conduct of business by, the Company.

2.8     Title to Property. All real and personal property owned by the Company shall be owned by the Company as an entity and no Member shall have any ownership interest in such property in its individual name or right, and each Member's interest in the Company shall be deemed personal property for all purposes. Except as otherwise provided in this Operating Agreement, the Company shall hold all of its real and personal property in the name of the Company and not in the name of any Member.

2.9     Payments of Individual Obligations. The Company's credit and assets shall be used solely for the benefit of the Company, and no asset of the Company shall be Transferred or encumbered for or in payment of any individual obligation of a Member.

2.10    Ownership. Membership Interests in the Company shall be personal property for all purposes and shall be issued in book-entry form. All property and interests in property, real or personal, owned by the Company shall be deemed owned by the Company as an entity, and no Member, individually, shall have any ownership of such property or interest except by owning Membership Interests in the Company as a Member. Each of the Members irrevocably waives, during the term of the Company and during any period of its liquidation following any dissolution, any right that it may have to maintain any action for partition with respect to any assets of the Company.

2.11    No State Law Partnership. The Members intend that the Company shall not be a partnership or joint venture, and that no Member shall be a partner or joint venturer of any other Member in connection with this Operating Agreement, for any purpose other than federal, state, and local income tax purposes, and the provisions of this Operating Agreement shall not be construed otherwise.

ARTICLE III

MEMBERSHIP INTERESTS

3.1     Authorized Membership Interests.  The Company shall have two authorized classes of Membership Interest, initially consisting of Profits Interests ("Profits Interests"), which may be issued in one or more series, and a single Capital Interest ("Capital Interest"), which shall be held by Holdings GP.  The Company shall be authorized to issue up to 1,700,000 Profits Interests.

(a)     As of the Effective Date, 15.43% of the Profits Interests are reserved in a management equity pool (such Profits Interests are referred to herein as the "Original Equity Pool"; the Profits Interests available for grant out of the management equity pool from time to time, including the Original Equity Pool, are referred to as "Management Equity Pool Interests").  The number of available Management Equity Pool Interests will decrease from time to time as a result of grants pursuant to Award Agreements, if any, and increase from time to time as a result of forfeitures of Profits Interests, if any, in accordance with the terms of this Operating Agreement or any Award Agreement.  As provided in Section 3.2 of this Operating Agreement, Management Equity Pool Interests may only be granted by the Board of Managers or the Compensation Committee, and all such Management Equity Pool Interests shall remain unvested until granted and the vesting conditions for such interests have been satisfied under the terms of this Operating Agreement and the Award Agreement pursuant to which each such Management Equity Pool Interest was granted.

(b)     Any Profits Interests that are forfeited in accordance with this Operating Agreement or any Award Agreement shall become Management Equity Pool Interests available for issuance in accordance with Section 3.2(a); provided, however, that the Company shall have no obligation to allocate any or all of the forfeited or unallocated Profits Interests.  For the avoidance of doubt, no unallocated or forfeited Management Equity Pool Interests shall at any time be allocated or made available for issuance to any Member(s) other than a Management Member.

3.2     Additional Terms Applicable to the Profits Interests.

(a)     The Board of Managers or the Compensation Committee, as applicable, may, in its sole discretion, issue Management Equity Pool Interests to employees, consultants or advisors of Holdings or its Subsidiaries.  The issuance of Management Equity Pool Interests shall be made pursuant to this Operating Agreement, and such issuance may also be governed by the terms and conditions set forth in an award agreement or subscription agreement in a form approved by the Holdings Management Board and the Board of Managers or Compensation Committee, as applicable (each, an "Award Agreement").

(b)     Each Profits Interest is intended to be a "profits interest" within the meaning of IRS Revenue Procedures 93-27 and 2001-43 and is issued with the intention, but without assurance, guarantee or liability on the part of the Company, Holdings or any of their respective officers, managers, directors, members or employees, or any Member, that under

-4-

current interpretations of the Code the recipient will not realize income upon the issuance or vesting of the Profits Interests, and that neither the Company nor any Member is entitled to any deduction either immediately or through depreciation or amortization as a result of the issuance or vesting of such Profits Interests.

(c) As a condition precedent to the receipt of Management Equity Pool Interests and, as applicable, admission as a Member, a prospective Management Member shall:

(i) execute and deliver a counterpart to this Operating Agreement;

(ii) make a timely protective election under Section 83(b) of the Code; and

(iii) execute and deliver any further documents and take any further actions as may be reasonably necessary or appropriate, in the determination of the Board of Managers or the Compensation Committee, in compliance with the terms and conditions of this Operating Agreement (including, in the case of a Management Member that is a natural person, a consent in the form attached hereto as Exhibit C from such Management Member's spouse), and shall notify the Company of the address to which notices, consents and communications hereunder shall be sent pursuant to Section 11.2.

(d) Holders of Profits Interests shall not be credited with any Capital Contribution.

(e) On the date of grant of any Profits Interest, the Board of Managers shall establish an initial Grant Value and the Winding Up Value with respect to such Profits Interest.

(i) Unless otherwise determined by the Board, the "Grant Value" shall be equal to the amount that would be available to distribute to the Members of Holdings pursuant Section 4.3(d) of the Holdings LLC Agreement in a hypothetical transaction in which Holdings sold all of its assets for the Winding Up Value (as determined immediately prior to the issuance of the Profits Interest). It is intended that the Grant Value with respect to each grant of a Profits Interest hereunder shall be established in such a manner that the calculation of the amount distributed to the grantee with respect to such Profits Interests, in a hypothetical liquidation of Holdings as of the date of grant thereof, would be equal to $0.00.

(ii) Unless otherwise determined by the Board, the "Winding Up Value" as of a particular date shall be equal to the Fair Market Value of all of the assets of Holdings as of such date.

(iii) The Board of Managers may designate a series number for each subset of Profits Interests having the same Winding Up Value, which Winding Up Value may differ from the Winding Up Values of all other Profits Interests not included in such subset.

(f) In connection with any Transaction, the Board of Managers, on such terms and conditions as it deems appropriate, is additionally authorized to take any one or more of the

following actions whenever it determines that such action is appropriate in order to (x) prevent dilution or enlargement of the benefits or potential benefits intended by the Company to be made available with respect to any Award granted or issued hereunder, (y) to facilitate such transaction or event or (z) give effect to such changes in applicable Laws or accounting principles:

   (i) To adjust the Winding Up Value of an Award;

   (ii) To provide for the cancellation of any such Award in exchange for either an amount of cash or other property with a value equal to the value of the Vested Profits Interests subject to the Award; provided that, if the value of such Vested Profits Interests subject to the Award is equal to or less than zero, then such Award may be terminated without payment;

   (iii) To provide that such Award shall vest, notwithstanding anything to the contrary in the provisions of such Award;

   (iv) To provide that such Award be assumed by the successor or survivor corporation, or a parent or subsidiary thereof, or shall be substituted for by awards covering the stock of the successor or survivor corporation, or a parent or subsidiary thereof, with appropriate adjustments as determined by the Manager;

   (v) To replace such Award with other rights or property selected by the Manager; and/or

   (vi) To provide that the Award will terminate and cannot vest, be exercised or become payable after the Transaction.

  3.3 _Names, Addresses and Membership Interests of Members_. The name and address of and the amount of Membership Interests held by each Member as of the Effective Date is set forth on schedules maintained by the Company (the "_Schedule of Members_").

  3.4 _Additional Membership Interests_. Other than the Management Equity Pool Interests, the Company may not grant or issue additional Membership Interests.

  3.5 _Certification of Membership Interests_. Membership Interests shall be issued in non-certificated form; _provided_ that the Board of Managers or Compensation Committee may cause the Company to issue certificates to a Member representing the Membership Interests held by such Member. If any Membership Interest certificate is issued, then such certificate shall bear a legend substantially in the following form:

> This certificate evidences a [Profits Interest / Capital Interest] representing an interest in Covis Management Investors US LLC and shall constitute a "security" within the meaning of and shall be governed by (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of Delaware, and (ii) the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as

-6-

adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

The Membership Interest in Covis Management Investors US LLC represented by this certificate is subject to restrictions on transfer set forth in that certain Limited Liability Company Agreement of Covis Management Investors US LLC, dated as of April 5, 2013 by and among the members from time to time party thereto, as the same may be amended from time to time.

The Membership Interest in Covis Management Investors US LLC represented by this certificate has not been registered under the United States Securities Act of 1933, as amended, or under any other applicable securities laws. Such Membership Interest may not be sold, assigned, pledged or otherwise disposed of at any time without effective registration under such Act and laws or, in each case, exemption therefrom.

3.6 Capital Accounts. A Capital Account shall be established and maintained for each Member in accordance with the following provisions:

(a) To each Member's Capital Account, there shall be credited such Member's Capital Contributions, such Member's distributive share of Profits, and any items in the nature of income or gain that are specially allocated pursuant to this Operating Agreement, and the amount of any liabilities of the Company that are assumed by such Member, or that are secured by any assets of the Company distributed to such Member.

(b) To each Member's Capital Account, there shall be debited the amount of cash and the Gross Asset Value of any Company assets distributed to such Member pursuant to any provision of this Operating Agreement, such Member's distributive share of Losses, and any items in the nature of expenses or losses that are specially allocated pursuant to this Operating Agreement, and the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

(c) If ownership of any Membership Interest in the Company is Transferred in accordance with the terms of this Operating Agreement, the transferee shall succeed to the Capital Account of the assignor to the extent that such Capital Account relates to the Transferred Membership Interest.

(d) In determining the amount of any liability for purposes of Subsections 3.6(a) and (b) above, there shall be taken into account Code section 752(c) and any other applicable provisions of the Code and Regulations.

(e) To each Member's Capital Account, there shall be debited or credited, as the case may be, such adjustments as are necessary to reflect a revaluation of Company assets to

reflect the Gross Asset Value of all Company assets, as required by Regulations section 1.704-1(b)(2)(iv)(f) and Section 3.7.

The foregoing provisions and the other provisions of this Operating Agreement relating to the maintenance of Capital Accounts are intended to comply with Code section 704 and Regulations section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Regulations. The Company shall make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Members and the amount of Company capital reflected on the Company's balance sheet as computed for book purposes in accordance with Regulations section 1.704-1(b)(2)(iv)(q).

3.7     Gross Asset Value. The Gross Asset Value of any asset of the Company shall be equal to the asset's adjusted basis for federal income tax purposes, except as follows:

(a)     The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross Fair Market Value of such asset, as determined by the contributing Member and the Board of Managers.

(b)     The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross Fair Market Values in connection with (and to be effective immediately prior to) the following events: (i) the acquisition of an additional Membership Interest in the Company by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (ii) the distribution by the Company to a Member of more than a *de minimis* amount of property (including cash) as consideration for an interest in the Company; (iii) the grant of an interest in the Company (other than a *de minimis* interest) as consideration for the provision of services to or for the benefit of Holdings or its Subsidiaries by an existing Member acting in the capacity of a Member or by a new Member acting in the capacity of a Member or in anticipation of being a Member; or (iv) the liquidation of the Company within the meaning of Regulations section 1.704-1(b)(2)(ii)(g); provided, however, that an adjustment pursuant to clauses (i), (ii), or (iii) above shall be made only if such adjustment is necessary or appropriate to reflect the relative economic interests of the Members in the Company.

(c)     The Gross Asset Value of any Company asset distributed to any Member shall be the gross Fair Market Value of such asset on the date of distribution.

(d)     The Gross Asset Values of Company assets shall be increased (or decreased) to reflect any adjustments to the adjusted bases of such assets pursuant to Code section 734(b) or Code section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Regulations section 1.704-1(b)(2)(iv)(m); provided, however, that Gross Asset Values shall not be adjusted pursuant to this Subsection to the extent they were adjusted pursuant to Subsection 3.7(b) above in connection with a transaction that otherwise would result in an adjustment pursuant to this Subsection.

(e)     If the Gross Asset Value of an asset has been determined or adjusted pursuant to this Section 3.7, such Gross Asset Value shall thereafter be adjusted by the

-8-

Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

        3.8    Conversion. At any time after the Effective Date, upon not less than thirty (30) days prior written notice to the Members, the Holdings Management Board and the Board of Managers may effect a Conversion of the Company. In such event, the Board of Managers shall prepare, and the Company shall have the right to require each Member to execute and deliver any agreements, instruments or other documents reasonably required to consummate the Conversion. The articles of incorporation, bylaws or organizational documents of the surviving company or corporation or other form of business organization shall be subject to approval by the Board of Managers and the Holdings Management Board. Each Member hereby agrees that such Member shall execute and deliver all agreements, instruments and documents as are required, in the reasonable judgment of the Board of Managers and the Holdings Management Board, to be executed by such Member to consummate the Conversion. In the event of a Conversion, the Members shall receive, in exchange for their Membership Interests, equity interests of such corporation or other business entity or its subsidiaries (which may be in the form of stock options, shares of restricted capital stock or some other form of capital stock or interests) having relative economic interest and rights and preferences equal to or better than the Member's Membership Interests as of the effective time of the Conversion, after taking into account the relative tax attributes of the pre-and post-conversion equity interests.

ARTICLE IV

DISTRIBUTIONS AND ALLOCATIONS

        4.1    Distributions. Except as provided in Section 4.2 hereof, all cash and property ("Proceeds") received by the Company pursuant to the Holdings LLC Agreement, shall be distributed by the Company to each Member holding Profits Interests as follows (it being understood that the Company shall be entitled to instruct Holdings to make any distribution owed to the Company directly to the Members entitled to receive a portion of such distribution under this Section 4.1):

        (a)    Nonliquidating Distributions; Distribution of Termination Payment.

        (i)    In the event the Company receives a Tax Distribution Amount from Holdings pursuant to Section 4.5 of the Holdings LLC Agreement, the Company shall distribute to the Management Members a portion of the Tax Distribution Amount, in *pro rata* amounts in proportion to their respective allocated Vested Profits Interests, in order to enable such Management Members to satisfy their tax liabilities arising out of their ownership of Profits Interests. Distributions of any Tax Distribution Amount received by the Company shall be treated as advances against the distributions otherwise payable to a Management Member and shall reduce such distributions accordingly.

-9-

(ii) In the event the Company receives a distribution from Holdings pursuant to Section 4.2 of the Holdings LLC Agreement, the Company shall distribute the Proceeds of such distribution to the Management Members holding Vested Profits Interests *pro rata* in proportion to their respective number of Vested Profits Interests.

(iii) In the event the Company receives a distribution from Holdings pursuant to Section 4.3(b) of the Holdings LLC Agreement as a result of the receipt by Covis US of the Termination Payment pursuant to Section 14.4 of that certain Supply and Distribution Agreement dated December 23, 2011 between Covis US and Covis Lux, as amended (the "Termination Payment"), the Company shall make distributions as follows:

(A) the Company shall distribute to each Management Member whose employment with or services to the Company has not been Terminated as of the date of distribution an amount equal to (X) the number of Vested Profits Interests held by such Management Member *multiplied by* (Y) the PI Unit Price (as defined below); and

(B) the Company shall distribute to Holdings the excess of (X) the amount of the Termination Payment over (Y) the aggregate amount distributed by the Company pursuant to the preceding clause (A).

For purposes of this Agreement, the term "PI Unit Price" means the quotient obtained by dividing (X) the Termination Payment by (Y) the aggregate number of Profits Interests (regardless of whether vested) that have been issued on or before the date of the event giving rise to the Termination Payment, including Repurchased Profits Interests, Forfeited Profits Interests and Vested Profits Interests held by Management Members who have previously been Terminated.

(iv) In the event the Company receives Proceeds other than pursuant to (A) receipt of a Tax Distribution Amount, (B) Section 4.2 of the Holdings LLC Agreement, (C) Section 4.3(b) of the Holdings LLC Agreement and (D) the occurrence of a Winding Up Event, the Board of Managers may distribute any portion of such Proceeds to the Management Members as it shall determine in its reasonable discretion but in any event all such distributions shall be *pro rata* in proportion to such Management Members' respective number of Vested Profits Interests.

(b) Liquidating Distributions. In connection with the occurrence of a Winding Up Event, the Board of Managers shall determine the Class B Winding Up Amount as provided in this Section 4.1(b) and notify the Holdings Management Board of such amount. Upon receipt of (1) the Class B Winding Up Amount pursuant to Section 4.3(d) or Section 4.4 of the Holdings LLC Agreement, (2) Proceeds from a Transfer subject to Section 4.2(a) of this Operating Agreement, or (3) Proceeds in connection with the liquidation of the Company pursuant to Section 9.2 of this Operating Agreement, the Company shall distribute in respect of each Vested Profits Interest the Pro Rata Portion attributable to such Vested Profits Interest. The following principles shall apply to the determination of the Class B Winding Up Amount and the Pro Rata Portion for purposes of this Section 4.1(b):

    (i) Each Vested Profits Interest with a Winding Up Value that is less than the Equity Profit Amount shall be entitled to a distribution of Proceeds equal to its Pro Rata Portion of the Equity Profit Amount with respect to such Vested Profits Interest.

    (ii) No Vested Profits Interest shall be eligible to receive any distributions pursuant to this Section 4.1(b) unless and until an aggregate amount equal to the Winding Up Value for such Vested Profits Interest has been distributed by Holdings pursuant to Section 4.3(d) of the Holdings LLC Agreement without such Vested Profits Interest participating in such distribution.

    (iii) All Unvested Profits Interests shall be disregarded for purposes of this Section 4.1(b) and shall not be considered to be outstanding.

    (iv) The maximum amount distributable to the Company as the Class B Winding Up Amount is equal to the Equity Profit Amount multiplied by the Percentage Interest of the Company in Holdings.

    (v) The good faith determination of the Board of Managers pursuant to and in accordance with this Section 4.1(b) shall be final and binding on all Members. An illustrative calculation of the distributions contemplated by this Section 4.1(b) is set out in Schedule 4.1(b) hereto.

    (vi) Definitions.

    (A) "Class B Winding Up Amount" means the aggregate amount distributable in respect of all Vested Profits Interests (including without limitation those vesting upon a Winding Up Event pursuant to the terms set forth in an Award Agreement) in connection with a Winding Up Event, as determined by the Board of Managers in good faith on the basis of and in accordance with the provisions of this Section 4.1(b) (for the avoidance of doubt, if the Company receives the Termination Payment at the same time it receives the proceeds of a Winding Up Event, the Termination Payment shall not be considered to be a part of the Class B Winding Up Amount but will instead be distributed pursuant to Section 4.1(a)(iii)).

    (B) "Equity Profit Amount" means: (X) in the case of a liquidating distribution described in clause (1) of Section 4.1(b), the aggregate amount available for distribution to the Company and the Class A Members of Holdings under Section 4.3(d) of the Holdings LLC Agreement upon a Winding Up Event; (Y) in the case of a liquidating distribution described in clauses (2) or (3) of Section 4.1(b), the aggregate amount of Proceeds from the Transfer or the aggregate Termination Payment, as the case may be; and (Z) in the case of a liquidating distribution described in clause (4) of Section 4.1(b), the aggregate amount distributable to the Members pursuant to Section 9.2(b). The calculation of the Equity Profit Amount shall be determined in good faith by the Holdings Management Board.

(C) "Pro Rata Portion" means, with respect to a Vested Profits Interest, the portion of the Equity Profit Amount for such Vested Profits Interest determined in good faith by the Board of Managers to be attributable to such Vested Profits Interest, based on (i) the aggregate number of Vested Profits Interests entitled to share in such portion of the Equity Profit Amount based on their respective Grant Values and Winding Up Values and (ii) the aggregate number of Class A Units entitled to share in such portion of the Equity Profit Amount.

4.2   Certain Sales.

(a) In the event of a permitted Transfer of all or any substantial portion of the Class B Units of Holdings held by the Company, the Board of Managers shall cause the Company to distribute the Proceeds from such Transfer in accordance with Section 4.1(b) hereof.

(b) In the event of a permitted Transfer of Class B Units held by the Company that is not covered by Section 4.2(a) of this Operating Agreement, the Board of Managers shall cause the Company to distribute the Proceeds from such Transfer to the Management Members in a manner determined by the Board of Managers in good faith to effectuate the intended economic sharing arrangement of the Members as reflected in Article IV of this Operating Agreement.

(c) The Company shall not Transfer any Class B Units except as expressly permitted by the Holdings LLC Agreement.

4.3   Allocations.

(a) For each Accounting Period, the Company's profits and losses shall be determined by the Board of Managers ("Profits" and "Losses") and shall be allocated to the Members as follows:

(i) for each Accounting Period, after adjusting each Member's Capital Account for all capital contributions and distributions during such Accounting Period or with respect to such Accounting Period, all Profits and Losses shall be allocated to the Members' Capital Accounts in a manner such that, as of the end of such Accounting Period, the Capital Account of each Member (which may be either a positive or negative balance) shall be equal to the amount which would be distributed to such Member determined as if the Company were to liquidate all of its assets, satisfy all of its liabilities and distribute the remaining Proceeds thereof pursuant to Section 4.1(b).

(ii) Notwithstanding anything to the contrary in this Operating Agreement, allocations shall be made with respect to Unvested Profits Interests as if they were vested, and upon forfeiture of Vested Profits Interests or Unvested Profits Interests, appropriate forfeiture allocations shall be made.

(iii) The Board of Managers may, in its sole and absolute discretion, make such other assumptions or modifications (whether or not consistent with the above