# EXHIBIT H

# PART 2

assumptions) as it deems necessary or appropriate in order to effectuate the intended economic sharing arrangement of the Members as reflected in Article IV, which is for the allocations pursuant to this Section 4.3 to track and follow the distributions actually made pursuant to Article IV.

(b)    For purposes of determining the Profits, Losses, or any other items allocable to any Accounting Period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as selected by the Board of Managers using any permissible method under Code Section 706 and the Regulations.

4.4    Withholding of Tax.

(a)    Notwithstanding any other provision herein, each Member hereby authorizes the Company to withhold and to pay over, or otherwise pay, any withholding or other taxes payable by the Company with respect to such Member or as a result of such Member's participation in the Company if, and to the extent that, the Company shall be required to withhold or pay any such taxes. Any such amounts withheld and paid shall be treated as cash distributed to such Member or loaned to such Member (and, if loaned, on such terms) as determined by the Board of Managers in its sole discretion. Each Member shall, to the fullest extent permitted by applicable law, indemnify and hold harmless each Person who is, or who is deemed to be, the responsible withholding agent (the "Agent") for federal, state, local and foreign tax purposes from and against any and all claims, liabilities and expenses of whatever nature relating to the Agent's obligation to withhold and to pay over, or otherwise pay, any withholding or other taxes on income or gain allocable to such Member, payable by the Company or as a result of such Member's participation in the Company.

(b)    Any withholdings referred to in this Section 4.4 shall be made at the maximum applicable statutory rate under the applicable tax law unless the Board of Managers shall have received an opinion of counsel or other evidence satisfactory to the Board of Managers, to the effect that a lower rate is applicable or that no withholding is applicable.

ARTICLE V

MANAGEMENT; LIABILITY; EXCULPATION

5.1    Management and Control.

(a)    The business and affairs of the Company shall be managed and administered by a managing board (the "Board of Managers") consisting of three persons (each a "Manager"), one of whom shall be designated by holders of a majority of the Vested Profits Interests and two of whom shall be designated by Holdings GP. The initial members of the Board of Managers shall be Mike Wells (the "PI Manager") (designated by the vote of the holders of a majority in interest of the Vested Profits Interests) and Alexander Benjamin and Ethan Klemperer (designated by Holdings GP) (each a "Holdings Manager").

-13-

(b)      Subject to the terms of this Operating Agreement, the Board of Managers shall have exclusive power and authority, in the name of and on behalf of the Company, to perform all acts and do all things that it deems necessary or desirable to conduct the business of the Company subject to the terms of this Operating Agreement.  Except as authorized by the Board of Managers or as set forth in this Operating Agreement, no Member shall participate in the management or control of the Company and no Member shall have the right, power or authority to act on behalf of or bind the Company in any manner in its capacity as a Member.

(c)      A Manager shall serve on the Board of Managers until his or her resignation or removal.

(i)      Eligibility to Serve as PI Manager.  No Person shall be eligible to serve as the PI Manager unless such Person (i) is a Management Member and (ii) is an employee of Holdings or one of its Subsidiaries (a Person meeting such requirements is a "Qualified Person").

(ii)      Resignation.  Any Manager may resign at any time by giving written notice to the Company.  The resignation of any Manager shall take effect upon receipt of such notice or at such later time as shall be specified in the notice and, unless otherwise specified in the notice, the acceptance of the resignation by the Company or the remaining Managers shall not be necessary to make it effective.  If the PI Manager ceases to be a Qualified Person for any reason, such PI Manager shall be deemed to have resigned from the Board of Managers effective immediately upon the occurrence of such event without the need for any further action on the part of any Person.

(iii)      Removal of Managers.  A Holdings Manager may be removed at any time from the Board of Managers, with or without cause, upon, and only upon, the written request of Holdings GP.  The PI Manager may be removed at any time from the Board of Managers, with or without cause, upon, and only upon, the written request of holders of a majority in interest of the Vested Profits Interests.

(iv)      Vacancies.  Any vacancy on the Board of Managers caused by the death, resignation or removal of a Holdings Manager shall be filled by Holdings GP.  Any vacancy on the Board of Managers caused by the death, resignation or removal of a PI Manager shall be filled by holders of a majority in interest of the Vested Profits Interests, and such vacancy may additionally only be filled with a Qualified Person.

(d)      At all meetings of the Board of Managers, a majority of the Managers then in office shall constitute a quorum for the transaction of business, and except as otherwise provided in this Operating Agreement, the act of a majority of Managers present at such meeting shall be the act of the Board of Managers.  If a quorum shall not be present at any meeting of the Board of Managers, the Managers present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.  Any action required or permitted to be taken at any meeting of the Board of Managers may be taken without a meeting if all of the Managers then in office consent thereto in writing.

(e)     Managers may participate in a meeting of the Board of Managers by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.  To the extent reasonably practicable, telephonic participation shall be made available at each meeting of the Board of Managers for those Managers who are unable to attend in person.  Two (2) days' prior written notice shall be required for any meeting of the Board of Managers.  A meeting may be held at any time without notice if all Managers are present or if those not present waive notice of the meeting in writing either before or after such meeting.

(f)     The Board of Managers is, to the extent of its rights and powers set forth in this Operating Agreement, an agent of the Company, and any action taken by the Board of Managers, and the signature of any Person authorized by the Board of Managers, on any agreement, contract, instrument or other document on behalf of the Company, shall be sufficient to bind the Company and shall conclusively evidence the authorization and approval of the Company and its Members with respect thereto.

(g)     The members of the Board of Managers shall not be compensated by the Company for services hereunder nor shall they be permitted to cause the Company to distribute any of its assets to themselves (except for distributions to which they may be entitled under this Operating Agreement in their capacity as Members).

(h)     The Board of Managers shall be entitled to delegate any of its powers to manage or control the Company to one or more committees consisting of one or more Managers, including a compensation committee; provided that any decision approved by any committee of the Board of Managers must be approved by the Board of Managers.

5.2     Voting.

(a)     Except in respect of (i) the designation and removal of Managers pursuant to Section 5.1(c) and (ii) any matter submitted to the Members of Holdings by the Holdings Management Board (such a matter referred to in this clause (ii) a "Holdings Vote Matter"), the Membership Interests shall carry no voting rights.

(b)     In connection with determining the vote of the Company as a Member of Holdings with respect to its Membership Interest in any Holdings Vote Matter:

(i)     Each Vested Profits Interest shall be entitled to one vote, but Unvested Profits Interests shall not be entitled to any vote. All votes shall be conducted by such means as the Board of Managers shall reasonably determine, without the necessity of a meeting.

(ii)     Unless the Board of Managers requires a greater vote, any matter to be voted upon by the Members shall require the affirmative vote or written consent of holders of a majority in interest of the Vested Profits Interests.

(iii)   The Board of Managers shall put all Holdings Vote Matters to a vote of the Management Members holding Vested Profits Interests and shall cause the Vested Percentage of the Class B Units to be voted in the same proportion as the vote of such Management Members on the Holdings Vote Matter.  By way of illustration, if the Vested Percentage is 50% and, in connection with a Holdings Vote Matter, 80% of the Management Members holding Vested Profits Interests vote in favor and 20% vote against, the Board of Managers shall cause 50% of the Class B Units to be voted as follows: 80% of such Class B Units shall be voted in favor and 20% of such Class B Units shall be voted against.

5.3    Authority, Duties and Obligations of the Board of Managers.

(a)    General.  The Board of Managers shall take all actions which may be necessary or appropriate for the conduct of the Company's business and the acquisition, investment, maintenance, preservation and operation of the Company Assets, in accordance with the provisions of this Operating Agreement, the Act and other applicable laws and regulations.

(b)    Activity of the Board of Managers.  The Board of Managers and its members shall devote so much of its and their time to the affairs of the Company as in the judgment of the Board of Managers the conduct of the Company's business shall reasonably require, and the Board of Managers shall not be obligated to do or perform any act or thing in connection with the business of the Company not expressly set forth herein.  Nothing herein contained in this Operating Agreement shall be deemed to preclude the members of the Board of Managers from engaging directly or indirectly in any other business or from directly or indirectly purchasing, selling, holding or otherwise dealing with any securities for the account of any such other business, for its own accounts or for other clients.  No Member shall, by reason of being a Member of the Company, have any right to participate in any manner in any profits or income earned, derived by or accruing to any Board of Managers member or any of his or her Affiliates from the conduct of any business other than the business of the Company (to the extent provided for herein) or from any transaction in securities effected by any Board of Managers member or any of his or her Affiliates for any account other than that of the Company.

(c)    The Board of Managers shall be the Tax Matters Partner within the meaning of Section 6231(a)(7) of the Code.  The Members shall execute any forms or documents as shall be requested by the Board of Managers from time to time in connection with this Section 5.3(c), and no Member shall take any action as Tax Matters Partner except as instructed to do so by the Board of Managers.

5.4    Officers.

(a)    The Company may have such officers as may be appointed from time to time by the Holdings Management Board or the Board of Managers.  Each officer shall serve until such time as he or she is removed by the Holdings Management Board or the Board of Managers.  The same individual may hold any two or more offices.

(b)    The Holdings Management Board or the Board of Managers may designate signatories to execute documents for and on behalf of the Company.

5.5    No Effect on Employment.  Neither this Operating Agreement nor any provision hereof nor any provisions of any Award Agreement shall confer upon any Member, Manager or officer, whether or not employed by Holdings or any Subsidiary as of the date of this Operating Agreement or thereafter, any right to employment or to continue in the employ of Holdings or any of its Subsidiaries or in any way affect any right or power of Holdings, acting through the Holdings Management Board or Holdings' authorized officers (or, if applicable, any Subsidiary acting through its board of directors (or equivalent body) or authorized officers), to terminate the employment, services or office of any Member, Manager or officer at any time with or without Cause or assigning a reason thereof, it being understood that this Operating Agreement shall not constitute nor in any way be interpreted as an employment agreement for any purpose whatsoever and, further, that any Member, Manager or officer shall be deemed for all purposes to be an employee "at-will" of Holdings or a Subsidiary (as applicable), subject, as applicable, to any written employment or other agreement between such Member, Manager or officer and Holdings or any Subsidiary (such an agreement, an "Other Agreement").

5.6    Waiver of Partition.  No Member shall, either directly or indirectly, take any action to require partition, file a bill for Company accounting or appraisement of the Company or of any of its assets or properties or cause the sale of any Company property; and, notwithstanding any provisions of applicable law to the contrary, each Member (and each Member's legal representatives, successors, or assigns) hereby irrevocably waives any and all rights such Member may have to maintain any action for partition or to compel any sale with respect to such Member's Membership Interests, or with respect to any assets or properties of the Company, except as expressly provided in this Operating Agreement.

5.7    Covenant Not to Withdraw or Dissolve.  Notwithstanding any provision of the Act, but except as otherwise provided in this Operating Agreement, each Member hereby covenants and agrees that the Members have entered into this Operating Agreement based on their mutual expectation that all Members will continue as Members and carry out the duties and obligations undertaken by them hereunder and that, except as otherwise expressly required or permitted hereby, each Member hereby covenants and agrees not to (a) take any action (if applicable) to file a certificate of dissolution or its equivalent with respect to itself, (b) take any action that would cause voluntary bankruptcy of such Member, (c) withdraw or attempt to withdraw from the Company, (d) exercise any power under the Act to dissolve the Company, (e) Transfer all or any portion of such Member's Membership Interests in the Company, except as permitted hereby, (f) petition for judicial dissolution of the Company, or (g) demand a return of such Member's contributions or profits (or a bond or other security for the return of such contributions or profits) without the unanimous consent of the Members.

5.8    Exculpation.  Each Manager undertakes to perform such duties, and only such duties, as are specifically set forth in this Operating Agreement in accordance with the provisions of this Operating Agreement, and no implied duties, covenants or obligations shall be read into this Operating Agreement against a Manager.  Members and Managers shall have no fiduciary duty to the Company, any Member or any other Person and Members and Managers shall have no liability to the Company, any Member or any other Person based on any claim of a breach of fiduciary duty.  Notwithstanding anything to the contrary in this Operating Agreement, to the extent that, at law or in equity, a Manager or Member would otherwise have duties (including

fiduciary duties) and liabilities relating thereto to the Company, any Member or any other Person, a Member or Manager shall not be liable to the Company, any Member or any other Person for breach of fiduciary duty for its good faith reliance on the provisions of this Operating Agreement, and the provisions of this Operating Agreement, to the extent that they restrict or eliminate the duties (including fiduciary duties) and liability of the Member or Manager otherwise existing at law or in equity, are hereby agreed by the Company, each Member and any other Person bound by this Operating Agreement to replace such other duties and liabilities of the Member or Manager.

5.9    Reliance.  Each Manager shall be fully protected in relying in good faith upon the records of the Company, Holdings and any of its Subsidiaries and upon such information, opinions, reports or statements presented to the Company by any officers, employees or committees of the Company, Holdings or any of its Subsidiaries, or by any other Person as to matters the Manager reasonably believes are within such other Person's professional or expert competence (including, without limitation, information, opinions, reports or statements as to the value and the amount of the assets, liabilities, profits or losses of the Company, Holdings or any of its Subsidiaries or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid).

5.10    Indemnification.

(a)    To the maximum extent permitted by applicable Law, the Company shall indemnify any current or former Member, Manager or officer of the Company (each a "Covered Person") against, and agrees to hold the Covered Persons harmless from, any and all losses, claims, damages, liabilities, joint or several, expenses (including legal fees and expenses), judgments, fines, penalties, interest, settlements or other amounts arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative and whether formal or informal and including appeals against the Covered Persons, arising from the Covered Persons' (as the case may be) performance of their duties under this Operating Agreement or by reason of any act or omission performed or omitted by the Covered Person on behalf of the Company, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence, willful misconduct or intentional breach of this Operating Agreement with respect to such acts or omissions; provided, that any indemnity under this Section 5.10 shall be provided out of and to the extent of the Company's assets only, and no other Member shall have any personal liability on account thereof.

(b)    The indemnification provided by this Section 5.10 shall be in addition to any other rights to which a Covered Person may be entitled under any agreement, pursuant to any determination by the Members, as a matter of law or otherwise, and shall continue as to any Covered Person who has ceased to serve in such capacity.

## ARTICLE VI

## MEMBERS; RESTRICTIVE COVENANTS

6.1     <u>No Right to Bind the Company</u>.  Except as otherwise provided herein, only the Board of Managers and such officers, employees or other agents of the Company authorized by the Board of Managers (or as otherwise provided herein) shall have the authority to bind the Company or have any rights or powers to conduct the business or affairs of the Company.  Any act of a Member in contravention of this <u>Section 6.1</u> shall be null and void and without force or effect.

6.2     <u>Restrictive Covenants Applicable to Management Members</u>.  In connection with the formation of the Company and its ongoing business, the Management Members will receive or have access to confidential proprietary information concerning the Company, Holdings and Holdings' Subsidiaries ("<u>Confidential Information</u>"), which is proprietary in nature and non-public.  Each Management Member acknowledges and agrees that, as a result of the foregoing access by Management Members to Confidential Information, the Company is entitled to certain protections against the wrongful use or disclosure of such Confidential Information. Accordingly, subject to <u>Section 6.2(g)</u> hereof, each Management Member agrees to the following covenants and acknowledges that the Company would not have issued Profits Interests to such Management Member absent such Management Member's agreement to comply with the following covenants:

(a)     Such Management Member shall not, and shall cause its Affiliates not to, disclose or cause to be disclosed any Confidential Information to any Person nor use any Confidential Information for its own purposes or its own account, except (1) in connection with its investment in the Company, to Members and their Affiliates, and legal, accounting or other representatives of such Member, who must agree to keep such disclosure confidential on terms substantially identical to the terms contained in this <u>Section 6.2</u>, (2) where such Confidential Information is publicly available, or (3) as otherwise required by any Law.

(b)     During the Restricted Period, such Management Member shall not, directly or indirectly, conduct, manage, operate, engage in, or have an ownership interest in any business or enterprise (other than the Company or Holdings and its Subsidiaries and Affiliates) engaged in the United States of America in the development, marketing or sale of any products that are being developed, marketed or sold by the Company or Holdings or any of their respective Subsidiaries or Affiliates or that are in development by the Company or Holdings or any of their respective Subsidiaries or Affiliates, in each case, as of date of any Management Member's Termination (a "<u>Competitive Activity</u>"); <u>provided</u>, <u>however</u>, that the Management Member may own, directly or indirectly, solely as a passive investment, securities of any Person if the Management Member is not a controlling person of, or a member of a group that controls, such Person, and does not, directly or indirectly, own two percent (2%) or more of any class of securities of such Person.

(c)     During the Restricted Period, the Management Member shall not, directly or indirectly, (i) solicit or encourage any employee, officer, or director of Holdings or its

Subsidiaries or Affiliates, to leave the employment thereby; or (ii) hire any employee or former employee or any officer or director of Holdings or its Subsidiaries or Affiliates.

(d)    During the Restricted Period, the Management Member shall not, directly or indirectly, solicit or encourage any Person who is a supplier, customer, client, distributor, or advertiser of Holdings or its Subsidiaries or Affiliates to discontinue or diminish such Person's business relationship with Holdings or its Subsidiaries or Affiliates, as the case may be.

(e)    The provisions of this Section 6.2 may be assigned by the Company or Holdings to the purchaser or other acquirer in connection with any transaction that results in a Winding Up Event (in which event the provisions of this Section 6.2 shall continue to be binding upon the Management Member and shall be enforceable by the purchaser or other acquirer).

(f)    Each Management Member acknowledges that (1) the Management Member has had an opportunity to seek advice of counsel in connection with all of the provisions of this Operating Agreement including, without limitation, this Section 6.2; (2) the provisions of this Section 6.2 are reasonable in scope and in all other respects; (3) any violation of the provisions of this Section 6.2 will result in irreparable injury to the Company, Holdings or its Subsidiaries or Affiliates, as applicable; (4) money damages would not be an adequate remedy to the Company, Holdings or its Subsidiaries or Affiliates, as applicable, in the event of a breach or threatened breach of any of the provisions of this Section 6.2 by the Management Member; and (5) specific performance in the form of injunctive relief would be an appropriate remedy in such case for the Company, Holdings or its Subsidiaries or Affiliates, as applicable. If a Management Member breaches or threatens to breach a provision of this Section 6.2, the Company, Holdings or their respective Subsidiaries or Affiliates (each of whom is an express intended third party beneficiary hereof), as applicable, shall be entitled, in addition to all other remedies, to an injunction restraining any such breach, without any bond or other security being required and without the necessity of showing actual damages.

(g)    The terms of any Award Agreement or Other Agreement to which a Management Member is or becomes subject may modify the application of any of the provisions of this Section 6.2 to a Management Member. Except to the extent explicitly modified as provided in the preceding sentence, the provisions of this Section 6.2 shall be in addition to any other contractual provisions to which a Management Member is or becomes subject, whether by virtue of an Other Agreement, an Award Agreement or otherwise.

6.3    Liability. The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member.

ARTICLE VII

BOOKS AND RECORDS

7.1     Books and Records.

(a)     The Board of Managers shall cause to be kept complete and accurate books of account and records with respect to the Company's business.

(b)     The Board of Managers shall cause to be maintained a Capital Account for each Member in accordance with Section 704 of the Code.

7.2     Financial Statements and Other Reports.

(a)     The Board of Managers shall use commercially reasonable efforts to distribute to the Members, within 120 days after the end of each Fiscal Year of the Company, a written annual report containing the financial statements of the Company and tax-reporting information on Schedule K-1 for such Fiscal Year prepared by the Company's accountants, as well as any other documents which the Company receives solely in its capacity as the MIP Member of Holdings.

(b)     Except as set forth in Section 7.2(a) above, no Member shall have any right to receive information regarding the Company or any of its Affiliates; provided, however, that the Board of Managers may determine to share information with one or more Members in its sole discretion to the extent that, and on such terms and conditions as, it deems necessary or appropriate.

(c)     The Board of Managers shall cause to be prepared and filed tax returns, reports, information statements and other such documents as shall be required by applicable law. The Board of Managers shall cause to be paid any tax liabilities (including interest, penalties, additions to tax and other related or similar amounts) imposed on the Company by any applicable Governmental Entity. The Board of Managers shall, in its sole discretion, allocate all such expenses to one or more series of Membership Interests in accordance with Section 4.3 hereof.

7.3     Copies of Amendments to Members.   The Board of Managers shall cause the Company to mail to the Members copies of any amendment to this Operating Agreement promptly upon the adoption of any such amendment.

ARTICLE VIII

TRANSFERS OF INTERESTS; REPURCHASE; FORFEITURE

8.1     Transfers of Interests.

(a)     <u>Restriction on Transfers</u>.  From and after the Effective Date, no Member may Transfer any of its Membership Interests (or any portion thereof) without the prior written consent of the Holdings Management Board (in its sole discretion), except to the extent that such Transfer is expressly permitted in accordance with the terms of this Operating Agreement.

(b)     <u>Substituted Member</u>.  No substitute or additional Members shall be admitted to the Company, except upon (i) the prior written consent of the Holdings Management Board (in its sole discretion), (ii) executing and delivering a joinder in the form attached to this Operating Agreement as <u>Exhibit B</u>, signifying such Member's agreement to be bound by the terms and conditions hereof, which joinder shall not be effective unless accepted and countersigned by the Company, such acceptance and countersignature not to be unreasonably withheld; and (iii) executing and delivering any further documents and taking any further actions as may be reasonably necessary or appropriate, in the determination of the Board, in compliance with the terms and conditions of this Operating Agreement (including, in the case of a substitute or additional Member that is a natural person, a consent in the form attached hereto as <u>Exhibit C</u> from such Member's spouse).

(c)     <u>Certain Permitted Transfers</u>.  Each Member shall have the right to Transfer any or all of the Vested Profits Interests owned by such Member to a Permitted Transferee, provided that at the time of any such Transfer, each such Permitted Transferee fulfills each of the conditions set forth in <u>Section 3.2(c)(i)</u> and <u>(iii)</u> hereof and pays the reasonable fees and expenses of the Company incurred in connection with such Transfer.  As used herein, "<u>Permitted Transferee</u>" means (i) in the case of a Member which is a natural Person, such individual Member's spouse or issue, including adopted children, and grandchildren, or a trust for the exclusive benefit of such individual Member's spouse or issue, or grandchildren or a limited liability company or similar entity controlled exclusively by such Member, such individual Member's spouse or issue, or grandchildren, and (ii) in the case of a Member which is a natural person and is deceased, such individual Member's heirs and personal representatives.

8.2     <u>Rights in Relation to Termination of Employment / Services</u>.

(a)     <u>Forfeiture of Unvested Profits Interests</u>.  Unless otherwise provided by the terms of an applicable Award Agreement, or Other Agreement, all Unvested Profits Interests held by a Management Member shall immediately be forfeited upon the Termination of such Management Member for any reason, irrespective of whether such Management Member receives, in connection with such termination, any severance or other payment under any agreement or otherwise.

(b)     <u>Vested Profits Interests</u>.  Unless otherwise provided by the terms of an applicable Award Agreement, or Other Agreement:

(i)     If a Management Member is Terminated for Cause, all of such Management Member's Profits Interests that are Vested Profits Interests shall immediately be forfeited without the payment of any consideration therefor; and

(ii)     If a Management Member is Terminated for any reason other than Cause, each of the Company and, if the Company declines to exercise the Call in respect of all of the Profits Interests, each Member holding Class A Units of Holdings (a "Class A Member") *pro rata* in accordance with its ownership of Class A Units, shall have the right (but not the obligation), exercisable by delivery of written notice (a "Call Notice") to such Management Member during the Option Period, to purchase (a "Call") all or any portion of the Profits Interests held by such Management Member that are Vested Profits Interests for the Fair Market Value thereof as of the Notice Date.  The Company shall be entitled to purchase all or any portion of the Profits Interests subject to the Call, at the Fair Market Value as of the Notice Date, and the Class A Members of Holdings shall only have the right (but not the obligation) to purchase those Profits Interests that the Company declines to purchase.  The Call Notice shall specify the Fair Market Value determined by the Company to be applicable to the Call.  Vested Profits Interests purchased by the Company are referred to herein as "Repurchased Profits Interests".

(iii)     All Profits Interests which are held by any Management Member after such Management Member is Terminated that the Company and the Class A Members of Holdings do not purchase (including Profits Interests which the Company is not entitled to purchase) pursuant to the provisions of this Section 8.2 shall continue to be subject to the applicable provisions of this Operating Agreement.

(c)     Subject to Section 8.2(d), the closing (the "Option Closing") of any purchase of Profits Interests pursuant to Section 8.2(b)(ii) (the "Subject Profits Interests") shall take place at the principal office of the Company on the latest of (i) fifteen (15) Business Days after the date on which notice of exercise of the Call is initially delivered (the "Notice Date"), or (ii) if the Management Member's Termination is by reason of death, permanent disability or adjudicated incompetency, ten (10) days after the appointment of a Legal Representative (or, in each case, if such day is not a Business Day), then the first Business Day thereafter (such applicable date, the "Scheduled Closing Date").  At the Option Closing, the Management Member shall Transfer to the Company and/or the applicable Class A Member of Holdings all right, title and interest in and to the Subject Profits Interests, which shall constitute (and, at the Option Closing, such Management Member shall represent, warrant and certify the same to the Company in writing) good and unencumbered title to such Profits Interests, free and clear of all liens, security interests, encumbrances and adverse claims of any kind and nature (other than those arising pursuant to this Operating Agreement), and, if the Profits Interests are certificated, shall deliver to the Company the certificate(s) representing the Profits Interests duly endorsed for Transfer, or accompanied by appropriate Transfer powers duly executed, and with all necessary transfer tax stamps affixed thereto at the expense of such Management Member, and the Company and/or the applicable Class A Member of Holdings shall deliver to such Management Member, in full payment of the purchase price for the Subject Profits Interests, either a wire transfer to an account designated by such Management Member or a cashier's, certified or official bank check, payable to the order of such Management Member (the method of payment to be at the option of the Company), in an amount equal to the applicable purchase price as provided in Section 8.2(b)(ii) above.  Notwithstanding anything herein to the contrary, from and after the Notice Date, such Management Member shall not have any rights with respect to any of

the Subject Profits Interests that are being repurchased, except to receive the purchase price therefor.

(d)     If the Company is prohibited from effecting the Option Closing on the Scheduled Closing Date by any contractual obligation of the Company or any of its Affiliates, the terms of any Profits Interest or by applicable Law (collectively, "Prohibitions"), then the Option Closing shall take place on the first practicable date on which no Prohibitions are applicable, but in any event within ten (10) days after such Prohibitions cease to be applicable, and, at the Option Closing, the Company shall pay to such Management Member interest on the unpaid purchase price from and including the Scheduled Closing Date to, but not including, the date of the Option Closing, at the rate of interest per annum publicly announced from time to time by JPMorgan Chase Bank or any successor bank thereto as its prime rate in effect at its principal office in New York City. If at any time the Prohibitions shall cease to be applicable to any portion of the Subject Profits Interests not purchased, then the Company shall purchase such portion on the first practicable date on which the Company is permitted to do so, but in any event within ten (10) days after such Prohibitions cease to be so applicable.

(e)     Notwithstanding anything to the contrary contained in this Section 8.2, if at any time prior to any Option Closing under this Section 8.2 the Company shall become entitled pursuant to Section 8.3 to deliver a Forfeiture Notice, the right of the Company and the Class A Members of Holdings to exercise a Call under this Section 8.2, and the obligation of the Company and the Class A Members of Holdings to consummate the closing of an exercise of the Call with respect to the purchase of any Subject Profits Interests shall immediately terminate and such Subject Profits Interests shall instead be governed by Section 8.3.

8.3     Prohibited Activities. Unless otherwise provided by the terms of an applicable Award Agreement or Other Agreement:

(a)     Prohibition Against Certain Activities. Each Management Member agrees that such Management Member will not at any time breach or violate in any material respect any material provision of Section 6.2 of this Operating Agreement and will not breach or violate in any material respect any material provision of any invention assignment, non-disclosure, non-solicitation or non-competition covenant in any employment or other agreement that the Management Member has with the Company or any of its Affiliates (such a breach or violation, a "Prohibited Activity").

(b)     Forfeiture of Profits Interests. Each Management Member understands and agrees that the Company has provided for such Management Member to hold Profits Interests in the Company to reward such Management Member for such Management Member's future efforts and loyalty to Holdings and its Subsidiaries by giving such Management Member the opportunity to participate in the potential future appreciation of Holdings. Accordingly, unless otherwise provided by the terms of an applicable Award Agreement or Other Agreement, if a Management Member engages in any Prohibited Activity, then the Company shall be entitled, at its option, exercisable by written notice (the "Forfeiture Notice"), to cause the Profits Interests held by such Management Member to be forfeited without the payment of any consideration. If the Company delivers a Forfeiture Notice and the Prohibited Activity is

-24-

incapable of being cured, such forfeiture shall be effective upon the delivery of the Forfeiture Notice. If the Company delivers a Forfeiture Notice and the Prohibited Activity is capable of being cured, the Management Member shall have twenty (20) days following receipt of the Forfeiture Notice to effect a cure to the Company's reasonable satisfaction. If the Company is not satisfied that the Prohibited Activity has been so cured within such twenty-day period, the Management Member's Profits Interests shall be forfeited at the conclusion of such twenty-day period without any further action by the Company. Profits Interests that are forfeited pursuant to the terms of this Agreement are referred to as "Forfeited Profits Interests".

ARTICLE IX

DISSOLUTION AND WINDING UP

9.1     Dissolution Events.

(a)     The Company shall dissolve and commence winding up and liquidating upon the authorization by the Holdings Management Board (a "Dissolution Event") following disposition of all Company Assets.

(b)     The dissolution of the Company pursuant to this Section 9.1 shall be effective on the date such Dissolution Event occurs, but the Company shall not terminate until the Company Assets have been distributed as provided herein. Except as provided in this Section 9.1, the Company shall not dissolve due to the expulsion, bankruptcy or dissolution of a Member or under any other circumstances described, or to which reference is made, in Section 18-801 of the Act.

9.2     Winding Up. Upon the occurrence of a Dissolution Event, the Company shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets and satisfying the claims of its creditors and Members, and the Board of Managers shall not take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Company's business and affairs. To the extent not inconsistent with the foregoing, all covenants and obligations in this Operating Agreement shall continue in full force and effect until such time as the Company Assets have been distributed pursuant to this Section 9.2 and the Company is terminated in accordance with the Act. The Board of Managers (or liquidator, as the case may be) shall be responsible for overseeing the winding up and dissolution of the Company, shall take full account of the Company's liabilities and Company Assets, shall cause the Company Assets to be liquidated as promptly as is consistent with obtaining the Fair Market Value thereof, and shall cause the Proceeds therefrom, to the extent sufficient therefor, to be applied and distributed in the following order and priority:

(a)     first, to the payment (or reasonable provision therefor) of all of the Company's debts and liabilities to creditors of the Company (including the Members who are creditors, if any) in the order of priority provided by law, whether by payment or the making of reasonable provision for payment thereof, which may include the setting up of such reserves as the Board of Managers (or liquidator, as the case may be) may deem necessary for any obligations or contingent liabilities of the Company, and the Board of Managers (or liquidator)

-25-